```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| BRIAN R. MCDOWELL,<br><br>            Plaintiff,<br><br>       v.<br><br>USAA GENERAL INDEMNITY COMPANY,<br><br>            Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>  Civil Action<br>No. 14-4529 (JBS/AMD)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this action, Plaintiff Brian R. McDowell seeks damages against Defendant USAA General Indemnity Company ("USAA"), arising from Defendant's alleged failure to pay him the full benefits owed under his flood insurance policy for damage to his home caused by Superstorm Sandy. Before the Court is Defendant's motion for judgment on the pleadings [Docket Item 49], seeking to dismiss Plaintiff's extra-contractual and tort claims for bad faith, pre-judgment and post-judgment interest, punitive damages, attorney's fees, and other consequential damages, and Plaintiff's cross-motion to amend his complaint [Docket Item 60], by which he agrees to drop his claims for bad faith and seeks to replace Count 2 with claims for fraud and misrepresentation. For the following reasons, the Court will grant Defendant's motion for judgment on the pleadings and deny Plaintiff's motion to amend the Complaint.

1.   **Background.** Plaintiff is a resident of New Jersey and holds a Standard Flood Insurance Policy ("SFIP") covering his home with USAA, a Texas-domiciled insurer which participates in the Federal Emergency Management Agency's ("FEMA") "Write Your Own" ("WYO") flood insurance program. (Compl. ¶¶ 2-4.)[1] On October 29, 2012, Plaintiff's home sustained "catastrophic" damage caused by Superstorm Sandy; the storm "hit and forced two walls off the foundation, which in turn sheared the roof rafters, which in turn (combined with floating debris) caused interior walls, including a load bearing wall, to shift and tilt . . . ." (Id. ¶ 31.)

2.   Plaintiff initiated a claim under his flood insurance policy with USAA. (Id. ¶ 32.) At USAA's direction, he gutted the house to prevent further water damage to mitigate his damages. (Id. ¶ 33.) USAA allegedly acknowledged, after an inspection on November 12, 2012, that his home was "substantially damaged" and that the "house may need to come down because of the structural damage." (Id. ¶ 35.) A FEMA adjuster estimated that the water level inside Plaintiff's home had reached 24" during the storm and stated that, as a result, multiple walls would need to be

---

[1] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiff's Complaint, documents explicitly relied upon in the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

2

re-footed and repaired or his home would have to be torn down. (Id. ¶ 36.) Lacey Township Officials have also concluded that Plaintiff's home suffered "substantial damage" within FEMA guidelines. (Id. ¶ 63.)

3. Plaintiff had submitted, and USAA had considered and paid out in part, a number of claims under his USAA policy in 2010 and 2011, prior to Superstorm Sandy in October 2012. (Id. ¶¶ 15-30.) In mid-November 2012, USAA took the position that Plaintiff had not made necessary repairs to his home after the prior flood and fire damage in 2011 as recommended by USAA's engineers and stated that it would pay Plaintiff only $15,212.99 for the repairs needed from Superstorm Sandy. (Id. ¶¶ 38-41.)

4. In response, Plaintiff retained Asset Protection Public Adjustment, LLC ("APPA") to prepare an estimate of the actual value of his insurance claim; the firm estimated that repairs would cost nearly $260,000. (Id. ¶¶ 42 & 44.) APPA engaged Careaga Engineering to inspect Plaintiff's home in April 2013. (Id. ¶ 45.) Careaga concluded that "the displacement of the exterior walls, interior walls and the framing members were direct physical losses caused by the flood that occurred solely as a result of Superstorm Sandy." (Id. ¶ 46.) Careaga's findings brought Plaintiff's loss within the terms of his USAA policy. (Id.)

5. USAA consulted with Atlantic Professional Services, its engineers, in June 2013 to again inspect Plaintiff's home and issue a report on Plaintiff's claim. (Id. ¶ 47.) Notwithstanding USAA's adjusters' opinion in November 2012 that Plaintiff's home was a total loss, Atlantic concluded that the damage to Plaintiff's home from Superstorm Sandy was due to his failure to make certain repairs as required by USAA and Atlantic on his previous insurance claims made in 2011. (Id. ¶ 48.) On July 18, 2013, USAA partially denied coverage on account of the findings of Atlantic's 2013 report. (Id. ¶ 49.) According to Plaintiff, USAA believes that "the damage to the Property caused by Superstorm Sandy was preexisting damage that had not been repaired during prior fire or water damage claims." (Id. ¶ 51.) An adjuster with the National Flood Insurance Program ("NFIP"), who inspected Plaintiff's home after USAA partially denied Plaintiff's claim a second time, agreed with Atlantic's conclusion that damage to the home had been caused by inadequate repairs following Plaintiff's 2011 damage. (Id. ¶¶ 52-54.)

6. Plaintiff submitted a Proof of Loss to USAA on November 23, 2013 under FEMA's extended deadlines. (Id. ¶ 65.) USAA issued Plaintiff a check for "Flood-Building" for $10,025.89. (Id. ¶ 66.) Plaintiff submitted a Supplemental Proof of Loss on April 13, 2014 which was denied on three grounds: "(i) the value stated in the POL are not substantiate [sic] and

4

are not agreed to; (ii) USAA did not agree with the scope of damage as being a direct physical loss by or from the flood; and (iii) the estimates included code compliance which is not covered under the NFIP Dwelling Form policy." (Id. ¶¶ 67-68.) Plaintiff appealed the denial of the Supplemental Proof of Loss and USAA offered to pay an additional $20,534.34. (Id. ¶69-70.) Plaintiff alleges that the payments made or offered by USAA -- $15,212.99 in November 2012, $10,025.89 in 2013, and $20,534.34 recently – are inadequate to repair or replace his home. (Id.)

    7.    Plaintiff maintains that he was never made aware of the 2011 repair recommendations and has never been provided with a copy of that report. (Id. ¶¶ 48, 50, 55.) He further maintains that USAA's files do not "document the prior damage on which USAA now bases its denial of coverage" and that this "refusal to produce any of the evidence from prior claims upon which USAA relies" belies the fact that "USAA has no reasonable or fairly debatable basis to deny" Plaintiff's claim. (Id. ¶¶ 58-60.) He asserts that the damage to his home "resulting from Superstorm Sandy clearly falls within the coverage of the Policy" and that he has always "complied with all terms and conditions of the USAA policy and has satisfied all conditions precedent to coverage under the Policy." (Id. ¶¶ 72-73.)

    8.    Plaintiff initially filed an action against USAA for breach of contract and other extra-contractual claims seeking

costs and fees. McDowell v. USAA General Indemnity Company, Case No. 13-6520 (JAP/TJB) (D.N.J. Oct. 29, 2013). Plaintiff agreed, by stipulation, to dismiss any extra-contractual claims and any reference to attorney's fees. [Case No. 13-6520, Docket Item 9.] Plaintiff voluntarily dismissed his action without prejudice on June 27, 2014 after the parties exchanged discovery. [Case No. 13-6520, Docket Item 17.] He then filed the instant action on July 17, 2014. [Docket Item 1.] Defendant answered the Complaint and asserted a variety of affirmative defenses to Plaintiff's action. [Docket Item 8.] The parties continued to exchange discovery before Defendant filed the pending motion for judgment on the pleadings [Docket Item 49] and Plaintiff responded with his cross-motion to amend his Complaint. [Docket Item 60.]

  9. **Standard of Review.** A defendant may move to dismiss a complaint before or after filing an answer. Fed. R. Civ. P. 12(b)(6) and (c); see also Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 675 (D.N.J. 1996). A motion made before an answer is filed is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."). The differences between Rules 12(b)(6) and 12(c) are purely procedural, and the

pleading standards of Rule 12(b)(6) are applied for both. Turbe v. Gov't of the Virgin Islands, 938 F.2d 427. 428 (3d Cir. 1991). Thus, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleischer v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

    10.  Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely give[n] when justice so requires." Therefore, in the absence of undue prejudice, unfair prejudice, or futility, motions to amend must be granted. United States ex rel. Schumann v. Astrazeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (citing Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000). And amendment is futile if it fails to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (3d Cir.

1996)). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, legal conclusions are not entitled to the same assumption of truth, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (quotation omitted).

11. **Defendant's Motion for Judgment on the Pleadings**. First, Defendant seeks to strike all of Plaintiff's extra-

8

contractual tort-based claims for pre-judgment and post-judgment interest, punitive damages, attorney's fees and other consequential and extra-contractual damages as requested in the "wherefore" clauses of Counts 1 and 3 of the Complaint.[2] Plaintiff does not dispute, in any briefing on either motion pending before this Court, Defendant's assertion that he is not entitled to extra-contractual claims or fees and costs.

12.  Plaintiff holds a SFIP issued by USAA, a WYO flood insurance carrier pursuant to the National Flood Insurance Program ("NFIP"). As the Third Circuit has explained, the NFIP is "a federally supervised and guaranteed insurance program presently administered by the Federal Emergency Management Agency ('FEMA') pursuant to the [National Flood Insurance Act] and its corresponding regulations." Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 (3d Cir.1998) (citing 44 C.F.R. §§ 59.1–77.2). FEMA promulgated the SFIP, set forth in 44 C.F.R. Pt. 61, App. A(1), (2), and (3), and provided for claims adjustment of the SFIP by private insurers operating as WYO companies. Messa v. Omaha Property & Cas. Ins. Co., 122 F. Supp.

---

[2] Defendant's motion sought initially to strike all extra-contractual damages from Counts 1, 2, and 3 of the Complaint, but Plaintiff agreed in his cross-motion to amend to drop his claim for bad faith in Count 2 of the Complaint, seeking to replace it with a claim for fraud and misrepresentation. The Court will consider Defendant's motion only with respect to Counts 1 and 3 of the Complaint and will address Plaintiff's new Count 2 with respect to his motion to amend, infra.

2d 513, 519 (D.N.J. 2000). "It is well settled that federal common law governs the interpretation of the SFIP at issue here." Torre v. Liberty Mut. Fire Ins. Co., 781 F.3d 651, 653 (3d Cir. 2015). As with other insurance policies issued under federal programs, the terms and conditions of the SFIP must be strictly construed. Suopys v. Omaha Property & Cas., 404 F.3d 805, 809 (3d Cir. 2005); Kennedy v. CNA Ins. Co., 969 F. Supp. 931, 934 (D.N.J. 1997) aff'd, 156 F.3d 1225 (3d Cir. 1998).

    13.  The plain language of the SFIP insures "against direct physical loss by or from flood" to, inter alia, a policyholder's dwelling. 44 C.F.R. Pt. 61, App. A(1), Art. III-A. The SFIP specifically excludes from coverage "any other economic loss you suffer" on account of flood damage. Id. Art. V-A(7). Courts, in this District and around the country, have uniformly held that this means that policyholders may pursue breach of contract claims to contest the handling of a claim under an SFIP, but "are not entitled to receive compensatory, punitive, or consequential damages, or attorney's fees" if they prevail on such claims. Messa, 122 F. Supp. 2d at 523. See also 3608 Sounds Ave. Condominium Ass'n v. South Carolina Ins. Co., 58 F. Supp. 2d 499, 502 (D.N.J. 1999) ("[I]t is also well established that plaintiffs who assert flood insurance claims cannot recover penalties and attorney's fees because federal law preempts such claims."); Weisbecker v. Szalkowski, Case No. 14-55, 2016 WL

10

3566719, at *4 (D.N.J. June 29, 2016) (dismissing Plaintiff's claims for attorney's fees, pre-judgment interest, and post-judgment interest in SFIP claim arising from Superstorm Sandy); <u>Linblad v. Nationwide Mut. Ins. Co.</u>, Case No. , 2014 WL 6895775, at *6 (D.N.J. Dec. 4, 2012) ("Courts have uniformly held that in breach of contract actions where the contract had been issued pursuant to the NFIA, prevailing plaintiffs are not entitled to recover attorneys' fees because federal law does not provide for such a remedy.").

14.  Accordingly, the Court will grant Defendant's motion for judgment on the pleadings. Plaintiff's requests for pre-judgment and post-judgment interest, punitive damages, attorney's fees and other consequential and extra-contractual damages as requested in the "wherefore" clauses of Counts 1 and 3 of the Complaint will be stricken.

15.  **Plaintiff's Motion to Amend**. Also pending before the Court is Plaintiff's cross-motion to amend the complaint. By his motion, Plaintiff agrees to drop his claim for bad faith and to replace it with one for "fraud and/or misrepresentation in the procurement of the SFIP." (Proposed Amended Complaint [Docket Item 60-21] Count 2.) The gravamen of Plaintiff's new allegations is that USAA induced him to purchase an insurance policy with a high premium by misrepresenting, orally and in writing, over a number of years, the cost of replacing his home.

According to Plaintiff, his amendment should be permitted because it states a claim upon which relief can be granted, and because it is not unduly prejudicial to Defendant. Defendant contends that Plaintiff's motion to amend should be denied because amendment would be futile. For the following reasons, the Court will deny Plaintiff's motion.

16. At the outset, the Court notes that Plaintiff's proposed claim for fraud in the procurement process of an SFIP is not preempted by the NFIA, as his claims for extra-contractual damages are. See Messa, 122 F. Supp. 2d at 521 (finding that tort claim arising from SFIP procurement is not preempted, while state law claims arising from the SFIP claims handling process would be); Spence v. Omaha Indem. Ins., 996 F.2d 793 (5th Cir. 1993) (same). Nonetheless, Plaintiff's proposed fraud claim may still be futile if his amended allegations fail to state a claim upon which relief can be granted. To state a claim for common law fraud, a plaintiff must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 2007). Pursuant to Rule 9(b), Fed. R. Civ. P., a plaintiff must "state the circumstances constituting fraud with

particularity." Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 344 (3d Cir. 1999). A defendant's knowledge or state of mind may be "alleged generally," Fed. R. Civ. P. 9(b), but "[e]ven under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice." Burlington Coat, 114 F.3d at 1418.

    17.  Plaintiff alleges that USAA misrepresented the value of his home in its initial quote and annual renewal notices, representing to him that the cost to replace his home would be at least $226,000 and up to $250,000 because that was the amount of flood insurance coverage recommended by USAA. (Prop. Am. Compl. ¶¶ 84-97.) Plaintiff alleges that USAA "was well aware" when it issued its initial quote and sent yearly renewal notices that the cost to repair Plaintiff's home would be far less (id. ¶ 84; see also ¶ 100, 103), but that the company intended that McDowell would rely on that figure and "procure an SFIP as to which it could charge higher premiums." (Id. ¶ 87; see also ¶¶ 88-96.) Plaintiff asserts that USAA's 2012 Valuation Report (Rosenthal Cert. Ex. B), produced in the course of discovery, shows that Defendant knew Plaintiff's home would only cost $90,480.42 to replace, inclusive of labor, materials, and a general contractor's profit and overhead.

    18.  Defendant takes the position that these allegations do not state an actionable fraud claim because Plaintiff has failed

13

to allege any misrepresentation by USAA regarding the value of Plaintiff's home and has failed to allege any facts showing that USAA "knew or had reason to believe that the initial quote was false." (Def. Opp. at 18-19.) According to Defendant, Plaintiff's assumption that USAA misrepresented the value of his home when it quoted him a coverage limit of $226,000 is based on a "simplistic" and ultimately false inference. (Id. at 18.) Defendant asserts that the $90,480.42 replacement cost figure from USAA's 2012 Valuation Report cannot give rise to an inference that the $226,000 initial coverage quote was false when it was made in 2005 because those numbers are unrelated: the Valuation Report was based on "an on-site inspection of the home by an adjuster after Plaintiff reported his Sandy claim," after Plaintiff allegedly failed to make required repairs following previous damage to his home in 2011, while the initial quote was based on information provided by Plaintiff regarding the size, location, and condition of his home. (Id.)

19.  The Court agrees with Defendant that the coverage limit quoted in USAA's initial letter to Plaintiff or in its yearly renewal notices is not a material misrepresentation that can support a common law fraud claim. By its own terms, an SFIP is not a value policy, a type of insurance policy "in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss."

14

44 C.F.R. Pt. 61, App. A(1), Art. II-28. Instead, in the event of flood damage, a homeowner holding an SFIP will be paid "actual cash value" to "replace the insured item of property <u>at the time of loss, less the value of its physical depreciation</u>." <u>Id.</u> Art. II-2 (emphasis added). The premium rates for SFIPs are based on federal law and regulation, <u>see</u> 42 U.S.C. §§ 4014-4015 and 44 C.F.R. § 62.23. Plaintiff was mistaken to interpret USAA's coverage limit quote as an agreed-upon value to his home, an amount to which he would be entitled in full if his home suffered flood damage. Rather, USAA's initial quote and renewal notices informed Plaintiff about the maximum flood insurance coverage statutorily available to a homeowner in his circumstances, and Plaintiff was free to acquire less building coverage under the NFIP. Because Plaintiff alleges no other basis on which USAA's coverage quote could be a misrepresentation as to the value of Plaintiff's home, the Court will deny Plaintiff's motion to amend.[3]

    20. An accompanying Order will be entered.


**August 9, 2016**                                 **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                           Chief U.S. District Judge

---

[3] Accordingly, the Court need not address the parties' arguments regarding the timeliness of Plaintiff's proposed fraud claim under the applicable statute of limitations, or whether permitting this amendment would unduly prejudice Defendant in this case.